IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Lewis T. Babcock**

Civil Action No. 16-cv-02415-LTB

TERRY GAY

     Applicant,

v.

SHAWN FOSTER, Warden, and
CYNTHIA H. COFFMAN, Attorney General for the State of Colorado,

     Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before me on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 1, filed *pro se* by Applicant Terry Gay.   The Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 challenges the validity of Applicant's criminal conviction in Case No. 2005CR1114 in the Jefferson County District Court in Golden, Colorado.

## I.  Background

In Applicant's direct appeal the Colorado Court of Appeals (CCA) summarized the background of Applicant's criminal case as follows:

> On the night of March 23, 2005, the victim was shot in the back of his head during a crowded party at a Jefferson County home.
>
> Gay arrived at the party prior to the shooting.   The party was chaotic, and the witnesses disputed its specific details.    During the night and prior to the shooting, partygoers crowded the house, consumed alcohol and drugs, and fought amongst themselves.   Late into the evening, a loud pop was heard; someone screamed, "He's dead"; and the victim lay on the floor of the house.   Some witnesses identified another individual as the shooter.

Jefferson County Sheriff's Officers responded to the shooting. An officer at the scene heard "a lot of screaming and yelling coming from the house," and observed people with blood on their clothes.

A sheriff's officer arrested Gay. The People charged Gay in Jefferson County with one count of first degree murder, two counts of crime of violence, and two counts of possession of a weapon by a previous offender. Gay pleaded not guilty on all counts and requested a jury trial.

Prior to trial, the People filed a motion to introduce evidence under CRE 404(b), that Gay was involved in a shooting in Denver occurring one week before the present shooting. The People offered the evidence to rebut Gay's denial that he owned or possessed any firearms, other than a shotgun found on his property; to show Gay's intent in the present shooting; and to show that Gay acted with deliberation and premeditation. Over defendant's objection, the trial court admitted the evidence at trial.

After a jury trial, the jury returned a verdict finding Gay guilty of first degree murder, and he was sentenced to life without the possibility of parole.

*People v. Gay*, No. 06CA1615, 1-2 (Colo. App. Nov. 24, 2010); ECF No. 11-5 at 4-5. The Colorado Supreme Court (CSC) denied Applicant's petition for certiorari review of the CCA's denial of his direct appeal. ECF No. 11-7. The CCA denied Applicant's Rule 35(c) postconviction motion on appeal, and the CSC denied Applicant's petition for certiorari review. *See* ECF Nos. 11-11 and 11-13. Applicant filed a § 2254 action in this Court on September 26, 2016, that sets forth eight claims. ECF No. 1.

On November 3, 2016, Magistrate Judge Gordon P. Gallagher directed Respondents to file a Pre-Answer Response and to address the affirmative defenses of timeliness under 28 U.S.C. § 2254(d), and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A), if Respondents intended to raise either or both in this action.

Respondents filed a Pre-Answer Response, ECF No. 11, on November 22, 2016, and Applicant filed a Reply, ECF No. 12, on December 15, 2016. Magistrate Judge Gallagher reviewed the Pre-Answer Response and the Reply, and filed an Order to Supplement Pre-Answer

Response that directed parties to address available state court remedies. ECF No. 13. Applicant and Respondents briefed the available remedies issues and on October 27, 2017, I entered an Order for Answer in Part, Dismissal in Part, and State Court Record, ECF No. 26. The October 27 Order dismissed Claims Four through Nine and directed Respondents to file an answer that addresses the merits of subparts (a) and (b) of Claim One and Claims Two and Three. ECF No. 26 at 19.

The remaining claims for review on the merits are as follows:

(1) (Claim One)-The trial court committed reversible error and violated Applicant's due process rights by refusing to recuse after improperly admitting evidence that

(a) Applicant had been accused of an unrelated shooting, which had occurred a week before the shooting in this case, and

(b) Applicant was known to say, "Do I need to go out and get my gun?", when he had problems with someone;

(2) (Claim Two)-The trial court violated Applicant's right to due process and a fair trial when it admitted testimony by a police detective that witnesses usually do not testify consistent with their prior statements to police; and

(3) (Claim Three)-Trial Counsel was ineffective in violation of the Sixth and Fourteenth Amendments and the Colorado Constitution.

Respondents filed an Answer, ECF No. 27, on November 27, 2017, addressing the remaining claims on the merits. Applicant filed a Reply, ECF No. 30, on December 29, 2017. After reviewing the Application, the Answer, the Reply, and the state court record, I conclude that the Application should be denied and the case dismissed with prejudice for the following reasons.

## II. Legal Standard

### A. *Pro Se* Standard of Review

Applicant is proceeding *pro se.* I, therefore, review the Application liberally and hold the pleading "to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*,

472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). An applicant's *pro se* status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 958 (10th Cir. 2002).

### B. 28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Applicant bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (collecting cases). Thus, "[w]hen a federal claim has been

presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. "Where there has been one reasoned state judgment rejecting a federal claim," federal habeas courts should presume that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*. 562 U.S. at 98. In other words, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "This 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

I review claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question a court must answer under § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases
> where the facts are at least closely-related or similar to the case *sub
> judice*. Although the legal rule at issue need not have had its
> genesis in the closely-related or similar factual context, the Supreme
> Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal

law, that is the end of my inquiry pursuant to § 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, I must determine whether the state

court's decision was contrary to or an unreasonable application of that clearly established rule of

federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established
> federal law if: (a) "the state court applies a rule that contradicts the
> governing law set forth in Supreme Court cases"; or (b) "the state
> court confronts a set of facts that are materially indistinguishable
> from a decision of the Supreme Court and nevertheless arrives at a
> result different from [that] precedent." *Maynard* [*v. Boone*], 468
> F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and
> brackets omitted) (quoting *Williams*, 529 U.S. at 405, 120 S. Ct.
> 1495) (citation omitted0. "The word 'contrary' is commonly
> understood to mean 'diametrically different,' 'opposite in character
> or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405, 120
> S. Ct. 1495 (citation omitted).

> A state court decision involves an unreasonable application
> of clearly established federal law when it identifies the correct
> governing legal rule from Supreme Court cases, but unreasonably
> applies it to the facts. *Id.* at 407-08, 120 S. Ct. 1495 . . . .

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See*

*Williams*, 529 U.S. at 409-10. '[A] federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly. Rather that application must also be

unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable

jurists exercising their independent judgment would conclude the state court misapplied Supreme

Court law." *Maynard*, 468 F.3d at 671. The Supreme Court has also stated:

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks omitted). In conducting this analysis, I "must

determine what arguments or theories supported or . . . could have supported[ ] the state court's

decision" and then "ask whether it is possible fairminded jurists could disagree that those

arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."

*Id.* at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the

state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181

(2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent

will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at

102 (stating that "even a strong case for relief does not mean the state court's contrary conclusion

was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

I review claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano*

*v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a

writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.' " *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, my analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial that defies harmless-error analysis, [I] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review). Under *Brecht*, a constitutional error does not warrant habeas relief unless I conclude it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. "[A] 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [I am in] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435.

I make this harmless error determination based upon a thorough review of the state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000). "In sum, a prisoner who seeks federal habeas corpus relief must satisfy *Brecht*, and if the state court adjudicated his claim

on the merits, the *Brecht* test subsumes the limitations imposed by AEDPA." *Davis v. Ayala*, ––

U.S. ––, 135 S. Ct. 2187, 2199 (2015) (citing *Fry*, 551 U.S. at 119-120).

If a claim was not adjudicated on the merits in state court, and if the claim also is not

procedurally barred, I must review the claim *de novo* and the deferential standards of § 2254(d) do

not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## III.   Analysis

### A.   Claim One-Denial of Due Process in Admitting Evidence

#### i.   *subpart (a)-Unrelated Shooting*

Applicant asserts that the trial court admitted evidence that Applicant had been accused of

a shooting in Denver a week prior to the shooting in this case. ECF No. 1 at 12. Applicant

further asserts that the trial court ruled the evidence was admissible to show knowledge, motive,

*mens rea*, and identity, which was for purposes other than those urged by the prosecution. *Id.*

Applicant states that he asked the trial court to reconsider the ruling and requested recusal, which

the court denied, and evidence of the shooting was admitted at trial. *Id.*

Applicant contends that the trial court violated his rights when it *sua sponte* advocated for

the admission of the Denver shooting for the purpose of establishing identity, a purpose not

supported by the prosecution. ECF No. 1 at 15. Applicant further contends that the trial court

admitted evidence against Applicant that was not very probative of identity in this case because it

was not "similar enough." *Id.* Applicant also contends that because it is reasonable to question

the judge's lack of impartiality the trial court erred in denying Applicant's motion to recuse. *Id.*

Applicant further states that the trial court, without making findings, or conducting any analysis,

admitted the evidence for the purposes of establishing intent, deliberation, and identity, which the

prosecution failed. *Id.*

Applicant also contends that the trial court relied on a witness's description of the shooter in the Denver shooting, which matched the description by witnesses in this case, in his decision to allow the evidence. ECF No. 1 at 16. Applicant argues that the fact the witness at the Denver shooting described the same unique features as the witnesses in the instant case does not result in it being more probable that Applicant was the shooter in the instant case or acted with deliberation or intent. *Id.* Applicant concludes that trial court erred in focusing on the purposes for the Denver shooting without considering whether the Denver shooting had any logical relevance to the instant case, separate from the inference of bad character. *Id.* Applicant also concludes that admitting the evidence allowed the jury to consider evidence that he was a drug dealer. *Id.*

The CCA addressed this claim as follows:

> A defendant may seek recusal of a trial judge if the motion and required affidavits contain facts from which a reasonable person may infer that the judge has a bias or prejudice toward the defendant that will in all probability prevent him or her from dealing fairly with the defendant. *People v. Cook*, 22 P.3d 947, 950 (Colo. App. 2000) (citing *People v. District Court*, 898 P.2d 1058 (Colo. 1995)). A trial judge's rulings adverse to a party's interests do not constitute grounds for recusal absent evidence that the judge is biased or prejudiced or has a bent of mind. *Parsons v. Allstate Ins. Co.*, 165 P.3d 809 (Colo. App. 2006). Unfavorable rulings and a court's alleged personal opinion formed from the judicial proceeding are insufficient to establish bias. *People in Interest of S.G.*, 91 P.3d 443, 448 (Colo. App. 2004). Appellate courts do not indulge in presumptions of bias and do not assume a violation of the Code of Judicial Conduct. *People v. Vecchio*, 819 P.2d 533, 535 (Colo. App. 1991).
>
> Here, following the prosecution's attempt to introduce evidence of the Denver shooting, the prosecutor, defense counsel, and the trial judge analyzed its admissibility pursuant to CRE 404(b). The record shows that the trial judge did so without demonstrating bias, prejudice, or "bent of mind" against Gay. *Parsons*, 165 P.3d at 820. Furthermore, the trial judge's choice to express his opinion or to engage in legal analysis on the requirements of CRE 404(b) in the course of the trial does not suggest an inability to deal fairly with Gay. *Cook*, 22 P.3d at 950.
>
> Accordingly, we conclude that the trial court did not err when it denied Gay's motion for recusal.

*Gay*, No. 06CA1615, at 9-10; ECF No. 11-5 at 12-13.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). It is generally recognized, however, that "due process compels recusal only when the biasing influence is so strong that the court may presume actual bias." *United States v. Mansoori*, 304 F.3d 635, 667 (7th Cir. 2002) (quotation marks and citations omitted), *cert. denied*, 538 U.S. 967 (2003). An accusation of bias grounded in prior judicial rulings against a party almost never demonstrates partiality requiring a judge's recusal. *See Liteky v. United States*, 510 U.S. 540, 555 (1994).

"[N]ot '[a]ll questions of judicial qualification . . . involve constitutional validity. Thus, matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion." *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820 (1986) (quoting *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)). Under this standard, only a few situations have been found where a judge's impartiality might be so impaired as to violate due process, and these situations include a showing of actual bias, *In re Murchison*, 349 U.S. 133, 136 (1955), or where the judge has a direct financial interest in the outcome of the case, *Tumey*, 273 U.S. at 523. Beyond these narrow circumstances, the requirements for recusal are normally governed by statute. *Aetna*, 475 U.S. at 820.

The review under Colorado law for judicial disqualification of a judge is limited as well. Under Colo. Rev. Stat. § 16-6-201(1) the standards for evaluating a motion for a change of judge are as follows:

(1) A judge of a court of record shall be disqualified to hear or try a case if:

> (a) He is related to the defendant or to any attorney of record or attorney otherwise engaged in the case: or

> (b) The offense charged is alleged to have been committed against the person or property of the judge or of some person related to him; or

> (c) He has been of counsel in the case; or

> (d) He is in any way interested or prejudiced with respect to the case, the parties, or counsel.

Affidavits of disqualification must allege personal rather than judicial bias, must show facts indicating the existence of the personal bias, and they must include more than mere conclusions. *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976).

Because the CCA found that Applicant's claims pertain only to rulings by the trial judge and his affidavits failed to present objective evidence of personal bias and prejudice, and because the claim Applicant has presented in this Court fails to assert any facts that indicate the existence of the trial judge's personal bias and prejudice, Applicant has not shown a bias influence so strong that the court may presume actual bias in violation of his due process rights.

The CCA's decision regarding Claim 1(a) is not contrary to or an unreasonable application of clearly established rule of federal law or an unreasonable determination of the facts in light of the evidence presented to the state court. I, therefore, find that Applicant is not entitled to relief in the recusal claim.

Further, I take note that Applicant fails to assert a denial of due process regarding the admission of the previous shooting evidence. The CCA addressed this issue as follows:

> We review a trial court's ruling on an evidentiary issue for an abuse of discretion. *People v. Stewart*, 55 P.3d 107, 122 (Colo. 2002). A trial court abuses its discretion if its ruling is manifestly arbitrary, unreasonable or unfair. *Id.* (citing

*People v. Ibarra*, 849 P.2d 33, 38 (Colo. 1993)). The trial court has considerable discretion to determine the relevancy, admissibility, probative value, and prejudicial impact of evidence. *Ibarra*, 849 P.2d at 38.

All relevant evidence is admissible unless otherwise excluded by constitution, statute, or rule. CRE 402; *People v. Rath*, 44 P.3d 1033, 1038 (Colo. 2002). Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401; *People v. Carlson*, 712 P.2d 1018, 1021-22 (Colo. 1986).

Under CRE 404(b), evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person in order to show that he acted in conformity therewith, but such evidence is admissible to show, among other things, proof of motive, opportunity, intent, identity, preparation, plan, or knowledge. Evidence of other, uncharged crimes is admissible only if it is logically relevant for some reason apart from an inference that the defendant acted in conformity with a character trait, and if the probative value of the evidence for that other reason is not substantially outweighed by the other policy considerations of CRE 403. *Rath*, 44 P.3d at 1038.

To be admissible under CRE 404(b), evidence of other crimes, wrongs or acts must satisfy a four-part test: (1) the proffered evidence must relate to a material fact; (2) it must be logically relevant to the material fact; (3) the logical relevance must be independent of CRE 404(b)'s prohibited inference, that the defendant committed the crime charged because he acted in conformity with his bad character trait; and (4) the evidence's probative value must not be substantially outweighed by the danger of unfair prejudice. *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).

Gay concedes that evidence of his involvement in the prior Denver shooting is a material fact that satisfies *Spoto's* first prong. However, Gay asserts that the People failed to articulate how his involvement in the Denver shooting was logically relevant to prove identity, intent, and deliberation in the present shooting. We are not persuaded.

Here, the trial court properly admitted evidence of Gay's involvement in the Denver shooting pursuant to CRE 404(b) and in accordance with *Spoto's* four-part analysis. First, the proffered evidence of his involvement in the Denver shooting relates to the material facts of identity, intent, and deliberation. *See People v. Baker*, 178 P.3d 1225, 1231 (Colo. App. 2007) (identity is a material fact for purposes of CRE 404(b) analysis); *Spoto*, 795 P.2d at 1318 (intent is undeniably a material fact for CRE 404(b) analysis); *People v. Adams*, 867 P.2d 54, 57 (Colo. App. 1993) (evidence of a defendant's other acts is admissible to prove his mental state for the crime charged). The People offered evidence of Gay's involvement in

the recent, prior Denver shooting to prove that he had access to a weapon, to establish the identity of the victim's shooter, and to show Gay's intent and deliberation in the present case.

The second step of *Spoto* is satisfied because evidence of Gay's involvement in the Denver shooting is logically relevant to prove the material facts of identity and intent. Logical relevancy tends to make the existence of the material facts more probable or less probable. *People v. Davis*, 218 P.3d 718, 729 (Colo. App. 2008). Due to the chaotic activity at the party before and after the shooting of the victim, the People offered CRE 404(b) evidence to prove the shooter's identity and intent. Evidence of Gay's involvement in the Denver shooting is logically relevant to the material facts of his identity and intent here, because it tended to negate Gay's theory of defense, proved that he owned or possessed a weapon, and showed that he acted with intent in the present shooting. Accordingly, the identity and intent of the victim's shooter became more or less probable in the context of such facts. *Davis*, 218 P.3d at 729.

*Spoto's* third step requires the proffered evidence to be logically relevant independent of CRE 404(b)'s prohibited inference. *Spoto*, 795 P.2d at 1318. Because all evidence of other bad acts could support a propensity inference, *Spoto* "does not demand the absence of the inference," but "merely requires that the proffered evidence be logically relevant independent of that inference." *People v. McBride*, 228 P.3d 216, 227 (Colo. App. 2009) (quoting *People v. Snyder*, 874 P.2d 1076, 1080 (Colo. 1994)). This requirement is satisfied where there is "similarity" between the present and prior acts, thereby showing a "specific tendency" of the defendant. *McBride*, 228 P.3d at 227 (quoting *Yusem v. People*, 210 P.3d 458, 466-67 (Colo. 2009)). In contrast, a "lack of similarity" increases the risk that a defendant's prior act does not show a "specific tendency" that can be separated from the prohibited inference of the defendant's conduct in conformity with a bad character trait. *McBride*, 228 P.3d at 227.

The trial court did not abuse its discretion in finding the third *Spoto* prong satisfied. Gay's prior act in the Denver shooting and his charged act of shooting of the victim were similar because Gay had recently and intentionally shot another person with a handgun. Gay's prior act identified his physical appearance, including his gold teeth, glasses, and corn-rowed hair, and his intent, including use of a handgun in both shootings. Thus, evidence of the Denver shooting was sufficiently similar to the specifics of the present shooting that it properly could be considered relevant independent of the prohibited inference that Gay acted in conformity with a bad character trait.

We similarly conclude that the trial court did not abuse its discretion in balancing evidence of the Denver shooting with the danger of unfair prejudice. *Spoto*, 795 P.2d at 1318. Gay's prior act was highly probative, as it tended to establish his identity and use of a weapon in the present shooting. Such evidence

always has a risk of unfair prejudice, but it was within the trial court's discretion to find that this risk did not substantially outweigh the probative value of the evidence. Accordingly, the trial court did not abuse its discretion when it admitted evidence of Gay's prior shooting pursuant to CRE 404(b).

*Gay*, No. 06CA1615, at 3-8; ECF No. 11-5 at 6-11.

As a general rule, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The question is whether, "considered in light of the entire record, its admission resulted in a fundamentally unfair trial." *Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002) (citing *McGuire*, 502 U.S. at 67-68)). Federal courts may only interfere with state evidentiary rulings when the rulings in question are "so unduly prejudicial that it renders the trial fundamentally unfair . . . ." *See Lott v. Trammell*, 705 F.3d 1167, 1190 (10th Cir. 2013) (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)); *see also Tucker v. Makowski*, 883 F.2d 877, 881 (10th Cir. 1989) (state court rulings on the admissibility of evidence are not questioned in federal habeas actions unless they "render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.") (internal quotations marks and citations omitted).

The Tenth Circuit "will not disturb a state court's admission of evidence of prior crimes, wrongs, or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies the defendant due process of law." *Hancock v. Trammell*, 798 F.3d 1002, 1038 (10th Cir. 2015) (quoting *Duvall v. Reynolds*, 139 F.3d 768, 787 (10th Cir. 1998).

As stated above, Applicant argues that the fact the witness at the Denver shooting described the same unique features as the witnesses in the instant case does not support a finding that it is more probable that Applicant was the shooter in the instant case or acted with deliberation

or intent. Applicant also concludes that the trial court erred in focusing on the purposes for the Denver shooting without considering whether the Denver shooting had any logical relevance to the instant case, separate from the inference of bad character. *Id.* Applicant also concludes that admitting the evidence allowed the jury to consider evidence that he was a drug dealer.

Nothing in the state court record indicates that the admission of the Denver shooting evidence was so prejudicial that Applicant was denied due process.

First, in response to the parties' colloquy regarding the relationship of the Denver shooting to the shooting at issue in this case, the trial court determined as follows:

> THE COURT: I understand. Here's what we're going to do. Thank you, counsel. We're going to strike the word knowledge, limited purpose of establishing intent, deliberation, and identity. I'll give that. And the reason is since you agree, or since I think I heard you agree that the question here as far as the defense is concerned about identity, and they are going to be given the facts of the Denver case for the purpose of their 404(b) evidence, and the fact that the Court's going to go ahead and go further with the language you may not use this evidence for the purpose of interring bad character, did he have a propensity to.
>
> I find it's appropriate to and does go to the issues of intent or deliberation as to this offense, as well as identity.

*Gay*, No. 05CR1114, June 16, 2006 Trial Tr. at 10-11. The trial court further indicated that if the prosecution uses the Denver shooting to present or argue propensity the court would address the issue at the time of question. *Id.* at 11.

Second, the jury was instructed by the trial judge, regarding Daniel Lynch's testimony, the victim of the Denver shooting, as follows:

> THE COURT: The testimony of this witness about any act of Terry Gay related to an incident involving Daniel Lynch is being admitted for a limited purpose. This evidence concerns acts allegedly involving the Defendant other than the acts for which the Defendant is now on trial, we talked about earlier on voir dire and earlier.

It is being introduced only for the limited purpose of establishing intent and deliberation, and identity. This evidence may be considered by you only for the limited -- for the purposes for which it has been or is going to be admitted.

You are instructed that you may not consider such evidence for any purpose except the limited purposes for which it was intended. You may not use this evidence for the purpose of inferring bad conduct, or that the Defendant has propensity to commit the crime charged.

June 16, 2006 Trial Tr. at 204.

Jurors are presumed to follow the instructions given by the judge. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citation omitted). The trial judge repeated the limiting instruction prior to defense counsel's cross-examination of Mr. Lynch. *See id.* at 232-33.

Furthermore, Applicant's attorney had the opportunity to cross-examine Mr. Lynch, during which the defense questioned him about his (1) identification of Applicant, along with other individuals, as the shooter; (2) criminal background; (3) inconsistent prior statements about the shooting; and (4) credibility. *See id.* at 233-51, 259-72. Applicant's Denver shooting claim is speculative at best.

The CCA's decision regarding Claim 1(b) is not contrary to or an unreasonable application of clearly established rule of federal law or an unreasonable determination of the facts in light of the evidence presented to the state court. The Court, therefore, finds that Applicant is not entitled to relief in the Denver shooting claim.

ii.    subpart (b)-"Need to get my Gun" Statements

Applicant asserts that the trial court erred in admitting the "need to get my gun" statements under the guise of impeachment. ECF No. 1 at 17. Applicant further asserts that the prosecution was allowed to impeach a witness based on his direct examination, even though the witness did not make any contradictory statement to a detective. *Id.* at 18.

17

The CCA addressed this claim as follows:

Gay contends that the trial court abused its discretion when it admitted evidence that he was known to say, "Do I need to go out and get my gun?" when he had a problem with someone.   We agree; however, we find the admitted evidence constituted harmless error.

At trial, AR testified during direct examination that he gave an initial statement to an investigator, and later refused to give a second statement.   During cross-examination, AR testified that some of his statements in the investigator's report were false, specifically, that he did not tell the police that Gay was known to carry a gun or that Gay would sometimes say, "Do I need to go get my gun?"

A second investigator then testified about his interview with AR and the first investigator, stating "[AR] said that Mr. Gay often talked about a gun; however he had never seen [Gay] with one" and then "[AR] said that Mr. Gay would often say that when he had problems with someone, quote, do I need to go out and get my gun, end quote."   Defense counsel objected, arguing that evidence that Gay was known to carry a gun was inadmissible character evidence pursuant to CRE 404(b).   The court admitted the second investigator's testimony as an "impeachment for statement of someone else under [CRE] 801 for prior inconsistent statement, or under the statute as substantive."

Cross-examination is generally limited to the subject matter of the direct examination and matters affecting the credibility of the witness.   CRE 611 (b).   The cross-examination rules "must be liberally construed to permit cross-examination on any matter germane to the direct examination, qualifying or destroying it, or tending to elucidate, modify, explain, contradict, or rebut testimony given by the witness."   *People v. Sallis*, 857 P.2d 572, 574 (Colo. App. 1993).

Extrinsic evidence as proof of a prior inconsistent statement is admissible under CRE 613 where the statement is used solely for impeachment purposes.   *People v. Jenkins*, 768 P.2d 727, 730 (Colo. App. 1988).   A prior inconsistent statement of a witness in a criminal trial is admissible as substantive evidence where the witness is given the opportunity to explain or deny the statement, or is still available to give further testimony, and where the statement relates to a matter within the witness's own knowledge.   § 16-10-201(1), C.R.S. 2010; *Montoya v. People*, 740 P.2d 992, 998 (Colo. 1987).

Here, the trial court ruled that the prosecution could impeach AR with statements he had previously made to the first investigator on the basis that such statements were inconsistent with his testimony on direct examination.   On appeal, the prosecution argues that AR's statement to the investigator that Gay would say, "[D]o I need to go out and get my gun?" was within the scope of AR's direct

examination, and therefore, was admissible as his prior inconsistent statement. AR's statement, however, was not inconsistent with his direct examination testimony.

During direct examination; AR testified that he gave an initial statement to an investigator, and later refused to give a second statement. Specifically, AR stated, "I told [the investigators] that I wouldn't talk, but they said they had some statements, that I had made a statement prior to this, prior to the meeting they had with me." On direct examination, AR did not testify in detail as to whether or not he had previously stated that Gay carried a gun or often stated, "[D]o I need to go out and get my gun?" Thus, AR's statements during cross-examination were outside the scope of his direct examination and not admissible as a prior inconsistent statement under CRE 613 or section 16-10-201. Accordingly, the trial court erred when it admitted this testimony.

The trial court's error, however, was harmless. When a trial court abuses its discretion in admitting certain evidence, reversal is not required if the error was harmless under the circumstances. *People v. Dore*, 997 P.2d 1214, 1222 (Colo. App. 1999). We analyze evidentiary trial error by inquiring into whether, when the evidence is viewed as a whole, the contested evidence substantially influenced the verdict or affected the fairness of the trial proceedings. *Id.* An error is harmless if there is no "reasonable probability that the defendant could have been prejudiced by the error." *Raile v. People*, 148 P.3d 126, 134 (Colo. 2006). In determining whether an error is harmless, we consider factors such as the importance of the evidence to the prosecution's case, the cumulative nature of the evidence, the presence or absence of contradictory or corroborating evidence, the extent of cross-examination permitted, and the overall strength of the prosecution's case. *Id.*

Here, the testimony that the prosecution elicited from AR on cross-examination, that Gay was known to carry a gun and would say, "[D]o I need to go out and get my gun?" did not substantially impair the fairness of the trial proceedings. *Dore*, 997 P.2d at 1222. The contested evidence neither conclusively corroborated nor contradicted the record of the victim's shooting, Gay's ownership of a weapon, and his presence at both the Denver and Jefferson County shootings. *Raile*, 148 P.3d at 134. As noted in the record, AR was one of several witnesses who testified as to details of the shooting. AR's testimony was neither particularly compelling nor conclusive as to Gay's involvement in the Jefferson County shooting. Accordingly, the trial court's admission of AR's statement was harmless error. *Dore*, 997 P.2d at 1222.

*Gay*, No. 06CA1615 at 10-15; ECF No. 11-5 at 13-18.

Upon review of the state court record, I find that if the trial court erred in allowing the prosecution to challenge AR's previous statement to the investigators during cross-examination, because they were outside the scope of his direct examination and not admissible as a prior inconsistent statement under CRE 613 or section 16-10-201, the error was harmless.

As stated above, under *Brecht*, a constitutional error does not warrant habeas relief unless I conclude it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. "[A] 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [the court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435.

Nothing in the trial transcript of AR's testimony, June 21, 2006 Trial Tr. at 44-99, supports a finding that the "[D]o I need to go out and get my gun?" reference had a substantial and injurious effect on the jury's verdict. As found by the CCA, the reference did not corroborate or contradict the record of the victim's shooting, Gay's ownership of a weapon, or his presence at both the Denver and Jefferson County shootings.

Applicant fails to demonstrate that the decision of the CCA is either contrary to or an unreasonable application of clearly established federal law. Applicant is not entitled to relief pursuant to § 2254 unless he can demonstrate a violation of his federal constitutional rights regarding AR's testimony, which he has failed to do. *See McGuire*, 502 U.S. at 67-68; *Knighton*, 293 F.3d at 1171. Applicant, therefore, is not entitled to relief with respect to this inadmissible testimony claim.

**B. Claim Two-Denial of Due Process in Admitting Police Testimony**

Applicant asserts that an investigator, who interviewed the prosecutor's key witness, testified that witnesses normally do not state the same details in court from when they were interviewed. ECF No. 1 at 19. Applicant argues that this testimony told the jury that the witness should be believed despite the inconsistencies between his interview and his testifying. *Id.* Applicant, therefore, concludes that the trial court erred in allowing this inadmissible opinion testimony. *Id.*

The CCA addressed this claim as follows:

> Gay contends that the trial court committed reversible error when it admitted a police detective's opinion testimony attacking the truth of the witness. We disagree.

> Evidence of a witness's truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise. CRE 608(a). A witness may not give opinion testimony with respect to "whether a witness is telling the truth on a specific occasion." *People v. Koon*, 713 P.2d 410, 412 (Colo. App. 1985).

> During trial, Investigator Arthur Peterson testified that witnesses do not always say "all the same details and things" at trial as they do during police interviews. Peterson only testified to typical reactions of all witnesses based on his general experience and observations. He did not offer any opinion testimony that a particular witness testified truthfully. Nor did Peterson "couch" his testimony in general terms, as Gay suggests, with the intent to bolster a particular witness's testimony. *People v. Snook*, 745 P.2d 647, 649 (Colo. 1987). Peterson's testimony does not necessarily refer to a particular witness's character for truthfulness. Thus, Peterson neither opined on the truth of a particular witness's testimony nor his or her character for truthfulness, and the trial court properly admitted the statement. Accordingly, the trial court did not abuse its discretion when it admitted Peterson's testimony.

*Gay*, No. 06CA1615 at 15-16; ECF No. 11-5 at 18-19.

As stated above, federal habeas corpus relief, generally, does not lie to review state law questions about the admissibility of evidence. *See McGuire*, 502 U.S. at 67-68. The question is

whether, "considered in light of the entire record, its admission resulted in a fundamentally unfair trial." *Knighton*, 293 F.3d at 1171 (citation omitted). Federal courts may only interfere with state evidentiary rulings when the rulings in question are "so unduly prejudicial that it renders the trial fundamentally unfair . . . ." *See Lott*, 705 F.3d at 1190 (citation omitted); *see also Tucker*, 883 F.2d at 881 (state court rulings on the admissibility of evidence are not questioned in federal habeas actions unless they "render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.") (internal quotations marks and citations omitted).

A review of Mr. Peterson's testimony supports the CCA findings. First, on cross-examination by defense counsel, Mr. Peterson was questioned regarding what Mr. Moghadam had stated during the interview after the shooting took place, which was directed to inconsistencies between Mr. Moghadam's statements made during the interview and when he testified. June 14, 2016 Trial Tr. at 219-226. On redirect the court allowed the prosecution to ask Mr. Peterson if witnesses he interviews provide the same details when they testify. June 14, 2016 Trial Tr. at 236. Mr. Peterson stated witnesses do not, but he agreed that the better person to testify is the witness and not the investigator. *Id.*

Sean Moghadam testified prior to Mr. Peterson testifying. *See* June 13, 2006 Trial Tr. at 228-315; June 14, 2006 Trial Tr. at 4-79. In cross-examination, Mr. Moghadam acknowledged some of the inconsistencies between his testimony on direct and the report. June 14, 2006 Trial Tr. at 4-37. Mr. Moghadam indicated that what was written down was a misunderstanding of what he was telling the detective who wrote the report. *Id.* Defense counsel attacked Mr. Moghadam's inconsistent statements in his trial testimony regarding where and when several fights took place, who was involved, and his position at the time the shooting took place. *See id.*

at 4-48 and 75-79.   Mr. Moghadam, however, was emphatic throughout his testifying that Applicant shot the victim.

Mr. Peterson's testimony did not tell the jury what result to reach or specifically address Mr. Moghadam's honesty.   Considered considering the entire record, Mr. Peterson's "no" response to the prosecution's question whether witnesses provide the same details or facts at trial as they do in a pretrial investigative interview was not so unduly prejudicial that it rendered the trial fundamentally unfair.

Applicant fails to demonstrate that the decision of the CCA is either contrary to or an unreasonable application of clearly established federal law.   Applicant is not entitled to relief pursuant to § 2254 unless he can demonstrate a violation of his federal constitutional rights regarding Mr. Peterson's testimony, which he has failed to do.   *See McGuire*, 502 U.S. at 67-68; *Knighton*, 293 F.3d at 1171.   Applicant, therefore, is not entitled to relief with respect to this inadmissible testimony claim.

### C.   Claim Three/Ineffective Assistance of Counsel

It was clearly established when Applicant was convicted that a defendant has a right to effective assistance of counsel.   *See Strickland v. Washington*, 466 U.S. 668 (1984).   To establish that counsel was ineffective, Applicant must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.   *See id.* at 687.   "Judicial scrutiny of counsel's performance must be highly deferential."   *Id.* at 689.   "A court considering a claim of ineffective assistance must apply a '*strong presumption*' that counsel's representation was within a 'wide range' of reasonable professional assistance."   *United States v. Rushin*, 642 F.3d 1299, 1306 (10th Cir. 2011) (quoting *Richter*, 562 U.S. at 104 (citation omitted).   It is an applicant's burden to overcome this

presumption by showing that the alleged errors were not sound strategy under the circumstances, *see Strickland*, 466 U.S. at 689, and that the errors were so serious that "counsel was not functioning as the 'counsel guaranteed the defendant by the Sixth Amendment.' " *Rushin*, 642 F.3d at 1307 (quoting *Richter*, 562 U.S. at 104) (emphasis and citation omitted). An applicant must show counsel failed to act "reasonably considering all the circumstances." *Pinholster*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 688).

Under the prejudice prong, an applicant must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In assessing prejudice under *Strickland* the question is whether it is reasonably likely the result would have been different. *Richter*, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id.* (citing *Strickland*, 466 U.S. at 693.)

Furthermore, under AEDPA, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard," which is the question asked on direct review of a criminal conviction in a United States district court. *Richter*, 562 U.S. at 101. "When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 105.

If Applicant fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See Strickland* 466 U.S. at 697. Also, ineffective assistance of counsel claims are mixed questions of law and fact. *See id.* at 698. Pursuant to § 2254(e)(1), the

factual findings of the state courts are presumed correct. Applicant bears the burden of rebutting this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### i. *Inadequate Investigation*

Applicant asserts that trial counsel failed to conduct a sufficient investigation into the pending Denver case by not (1) interviewing alibi witnesses; and (2) speaking with Applicant's appointed counsel in the Denver case. ECF No. 1 at 20. Applicant contends trial counsel instead conceded that the prosecution had established by a preponderance of the evidence the Denver shooting likely was committed by Applicant. *Id.* Applicant further contends that the verdict was only weekly supported by the record, and as a result trial counsel's failure to conduct a reasonable investigation more likely affected the outcome of the trial. *Id.*

Applicant further asserts that trial counsel offered no strategic justification for not (1) going to the scene of the incident; (2) interviewing any of the twenty plus eyewitnesses; (3) interviewing the alternate suspect; (4) independently testing forensic evidence from the gunshot residue test; (5) interviewing associates of the alternate suspect or another individual who had engaged in "battle rapping" with the victim at the time of the incident; and (6) providing ballistics evidence of the trajectory and proximity of the gunfire at the time of the shooting. ECF No. 1 at 21. Applicant contends that testimony and facts, apparently that would have been established as a result of the investigation referred to above, would have been material and favorable. *Id.*

The CCA addressed this claim as follows:

> Defendant asserts that trial counsel's failure to investigate prejudiced him at a pre-trial evidentiary hearing, during voir dire, and at trial. But he has failed to assert sufficient facts to support these contentions. While he alleges that trial counsel rendered ineffective assistance by failing to subpoena additional witnesses, undertake an independent investigation into his unrelated shooting case, discuss his unrelated case with defense counsel for that case, independently test forensic

25

evidence, and provide ballistics evidence at trial, he does not assert any facts that would have arisen from these additional undertakings.

Instead, he only asserts that "[i]n each case, the failure to conduct an investigation was harmful to [him], as the testimony or facts unavailable would have been both material and favorable." Accordingly, he has failed to meet his burden to show how any of these undertakings would have resulted in different outcomes during the evidentiary hearing, voir dire, or trial. (footnote omitted). Because he has failed to meet his burden to assert facts that would demonstrate prejudice, we affirm the trial court's order denying relief on these grounds.

*People of the State of Colo.*, No. 14CA0698, 5-6 (Colo. App. Oct. 15, 2015); ECF No.

11-11 at 7-8.

"The duty to investigate derives from counsel's basic function . . . to make the adversarial testing process work in the particular case." *Williamson v. Ward*, 110 F.3d 1508, 1514 (10th Cir. 1997) (citation and internal quotation marks omitted). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* (citation and internal quotation marks omitted). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-91.

Even if trial counsel was ineffective, as Applicant suggests in the Reply, regarding the lack of investigation, Applicant fails to assert how he was prejudiced by counsel's conduct. Applicant does not assert what trial counsel would have discovered if he had performed the suggested investigation.

Therefore, considering the evidence presented in the state court proceedings, the CCA's determination was reasonable. The factual findings relied on by the trial court are presumed correct in this federal habeas proceeding and are supported by the state court record.

Because Applicant does not point to any clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), I find that Applicant has not demonstrated a reasonable probability that, but for counsel's unprofessional errors in investigating the issues noted above, the result of the proceeding would have been different, *Pinholster*, 563 U.S. at 189.

### ii. *Overwhelming Workload*

Applicant asserts that trial counsel's substantial workload interfered with counsel's ability to (1) conduct a full investigation into the facts, including interviews with material witnesses; (2) make strategic decisions based on sufficient information; (3) meet or communicate with Applicant; and (4) consider all available procedural steps, including change of venue, motion for severance regarding possession of weapon, and subpoenaing critical witnesses. ECF No. 1 at 21-22. Applicant further asserts that trial counsel did not keep him informed of the developments in the case and progress in preparing the defense, which affected Applicant's decision to testify or to not testify. *Id.*

Applicant raised this claim in his appeal of the denial of his Rule 35(c) postconviction motion by the trial court. The CCA, however, did not specifically address this claim. Nonetheless, for the same reasons stated above in addressing Applicant's investigations claim, this claim lacks merit.

Thus, there is reasonable argument that trial counsel satisfied the *Strickland* deferential standard. Even if trial counsel were found to have acted unreasonably in not conducting the suggested investigations, Applicant fails to assert he was prejudiced by counsel's failure to do so.

Nothing Applicant asserts demonstrates a reasonable likelihood that the result of the trial would have been different. *Richter*, 562 U.S. at 111. Applicant has failed to present clear and convincing evidence that if trial counsel's workload had not been overwhelming, the result of the proceeding would have been different.

### iii.  *Failure to evaluate Competence of Jurors in Voir Dire*

Applicant asserts that trial counsel was ineffective in his evaluation of the potential jurors' competence and in assuring the jury was impartial. ECF No. 1 at 22. Applicant contends that trial counsel's failure to conduct a reasonable investigation, review material evidence, and discuss strategy with Applicant prevented counsel from adequately examining potential jurors. *Id.*

For the same reasons that Applicant's lack of investigation claim is denied this claim is denied.

Thus, there is reasonable argument that trial counsel satisfied the *Strickland* deferential standard. Even if trial counsel were found to have acted unreasonably in not adequately examining potential jurors, Applicant fails to assert he was prejudiced by counsel's failure to do so. This claim is highly speculative and even if considered does not demonstrate that there was a reasonable likelihood that the result of the trial would have been different. *Richter*, 562 U.S. at 111.

Applicant has failed to present clear and convincing evidence that trial counsel was ineffective in failing to adequately determine the competency of prospective jurors.

### iv.  *Conclusion*

I find that the state court's decision to dismiss Applicant's ineffective assistance of trial counsel claim was not contrary to or an unreasonable application of any clearly established rule of

federal law as determined by the U.S. Supreme Court or a decision that was based on an unreasonable determination of the facts.   Claim Three lacks merit and will be denied.

## IV.   Conclusion

For the foregoing reasons, it is

ORDERED that the Application, ECF No. 1 is DENIED and the action is DISMISSED with prejudice.   It is

FURTHER ORDERED that the issuance of a Certificate of Appealability pursuant to 28 U.S.C. § 2253(a) is denied.   Applicant has not made a substantial showing of the denial of a constitutional right such that reasonable jurists could disagree as to the disposition of his petition pursuant to the standards of *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).   *See* 28 U.S.C. § 2253(c)(2).   It is

FURTHER ORDERED that it is certified pursuant to 28 U.S.C. § 1915(a)(3) any appeal from this Order is not taken in good faith, and, therefore, *in forma pauperis* status will be denied for the purpose of appeal.   *See Coppedge v. United States*, 369 U.S. 438 (1962).   If Applicant files a notice of appeal he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED this   18th   day of   September   , 2018.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court